# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| CONZALOS GLASCO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:13-cv-00788-WTL-DKL |
| | ) |
| DR. LAVINE, | ) |
| | ) |
| Defendant. | ) |

## Entry Granting Unopposed Motion for Summary Judgment
## and Directing Entry of Final Judgment

For the reasons explained in this Entry, the defendant's motion for summary judgment [dkt. 17] must be **granted.**

## I. Background

The plaintiff in this civil rights action is Conzalos Glasco ("Glasco"), an inmate at the Pendleton Correctional Facility ("Pendleton"). The defendant, psychiatrist Dr Levine (misspelled Dr. Lavine" in the complaint), at all relevant times treated Glasco at Pendleton.

In his complaint and supplement thereto, Glasco alleges that Dr. Levine forced him to take mental medicine and that the medicine caused Glasco to vomit, experience pain, and his arm to shake. Glasco further alleges that Dr. Levine ignored Glasco's pain and suffering.

Dr. Levine seeks resolution of Glasco's claim through the entry of summary judgment. Glasco has not opposed the motion for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

As noted, Glasco has not opposed the motion for summary judgment. The consequence of his failure to do so is that he has conceded the defendant's version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## III. Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Glasco as the non-moving party, the following facts are undisputed for purposes of the motion for summary judgment:

While incarcerated, Glasco has had a history of paranoid schizophrenia, violent behavior towards others, delusions concerning tampering with his food, and psychotic behavior. Dr.

Levine first saw Glasco on January 10, 2013, in response to an administrative request for an initial psychiatric evaluation due to Glasco's disruptive behavior and presumed psychosis. During the initial visit, Glasco stated that the only assistance he needed from Psychiatric Services was assistance in "obtaining legal remedies/ injunctions against people who he believes are persecuting him." Glasco also stated that another offender had thrown urine on him while showering and that feces were frequently mixed with his food. Glasco's descriptions of these incidents did not appear to be realistic. Glasco has received several conduct reports regarding agitated and aggressive behavior relating to his psychotic beliefs. Glasco reported that mental health treatment was recommended before he was incarcerated, but he said he had not been hospitalized or treated for mental health issues. Based on Dr. Levine's examination of Glasco, his review of the patient's medical records, his experience in treating inmates with mental disorders, Glasco's mental condition, Glasco's multiple misconduct reports, and Glasco's loss of weight due to his fear that his food was contaminated with feces, Dr. Levine recommended that Glasco be treated with medication to address his psychotic symptoms.

Dr. Levine made the clinical assessment that Glasco suffered from Paranoid Schizophrenic Disorder. When Glasco stated he would not voluntarily take medication to treat his psychotic symptoms, Dr. Levine recommended that Glasco be evaluated by the Indiana Department of Correction ("IDOC") committee on involuntary non-emergent treatment ("Treatment Review Committee"). This decision to refer Glasco to the Treatment Review Committee was based on Dr. Levine's examination of Glasco, the medical records, and Dr. Levine's assessment that Glasco posed a risk of serious harm to himself or others and suffered from a serious mental illness.

On January 28, 2013, the Treatment Review Committee held a hearing pursuant to IDOC

guidelines. Dr. Levine was present and testified at the hearing. The report of the Treatment Review Committee hearing reflects that Glasco refused to sign the notice of hearing form and refused to attend the hearing. The report further reflects that Glasco was diagnosed as suffering from paranoid schizophrenia and was highly delusional. The Treatment Review Committee found that Glasco was a risk to himself and others due to his delusions and that it was in "the best interest of the Offender to start involuntary medication." Glasco was prescribed the drug Fluphenazine as treatment for his schizophrenia. Dr. Levine did not participate in the vote on the involuntary treatment recommendation.

The involuntary administration of the medication was medically necessary not only for Glasco's own health and safety, but also for the safety of the staff and other inmates. On January 29, 2013, Glasco was placed on suicide observation as a precaution.

On January 30, 2013, the scheduled nurse visit notes reflect that Glasco received an injection of fluphenazine per physician orders. Glasco was agitated and stated, "this is gonna be a law suit, I know you all are following doctors' orders but they cannot be given [sic] me this shot, I want a pill."

On January 31, 2013, Dr. Levine examined Glasco. In his medication management report, he noted that Glasco was less overtly hostile in demeanor, but continued to argue regarding his delusions. Glasco's sole complaint regarding side effects of his medication were of sedation.

On February 16, 2013, Glasco was reported in the nurse visit notes as again objecting to his involuntary, non-emergent treatment status. Glasco appeared angry and demanded medical provider's names.

On February 19, 2013, Glasco was seen by Dr. William Wolfe for a scheduled provider

visit. Glasco complained of body aches, nausea, and vomiting after receiving the mandatory medical injections. Glasco was reported as hostile and threatening at the time of the injections. Dr. Wolfe prescribed Tigan as needed for symptoms of nausea and noted that Glasco had prescriptions for pain relief.

On February 19, 2013, Glasco was also seen by Herbert Troyer for a behavioral health segregation visit. Mr. Troyer reported that Glasco was upset about the mandatory medications and stated he would get a judge to stop them. Glasco was not receptive to Mr. Troyer's concerns regarding his behavior and repeated that he would get a judge to "make the Dr. not give him meds if he did not want it."

Glasco's mental health treatment plan included treatment of his psychotic symptoms, assistance in understanding the need for treatment of mental illness, and addressing his impulse control problems including aggressive outbursts and assaultive behavior. Dr. Levine saw Glasco on March 7, 2013, at which time Glasco continued to assert his belief that his food was being contaminated with feces and that he had a right to have his food tested. He continued to complain of nausea but refused anti-nausea medication. Nausea and vomiting was not observed by custody staff.

Dr. Levine saw Glasco again on March 27, 2013. Glasco refused to voluntarily come to the examination area and repeated his belief that his involuntary medication was not necessary. He showed no active signs of psychosis. Glasco stated his medications caused lack of energy, vomiting and nosebleeds. Custody staff reported that Glasco participated in recreation and running laps. Custody staff had not observed nosebleeds or vomiting. Glasco was advised of his rights concerning objecting to involuntary treatment.

On April 25, 2013, Dr. Levine saw Glasco for a medication management visit. Glasco's

psychosis appeared to be stabilized and Dr. Levine recommended attempted maintenance with a lower dose of Prolixin (fluphenazine) to relieve sedation.

Glasco's health, including his mental condition, continues to be evaluated and monitored.

### B. Analysis

At the time of his confinement at Pendleton, Glasco was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment=s proscription against the imposition of cruel and unusual punishments. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish a medical claim that a prison official has violated the Eighth Amendment, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) deliberate indifference by the prison official to that condition. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006).

As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.@ *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). The defendant does not dispute that Glasco has an objectively serious medical condition consisting of paranoid schizophrenia.

As to the second element, "[t]o show deliberate indifference, Glasco must demonstrate

that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). "A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King,* 680 F.3d at 1018-1019 (internal quotation omitted). "Deliberate indifference is more than negligence and approaches intentional wrongdoing." *Johnson,* 444 F.3d at 585 (internal quotation omitted). "[D]eliberate indifference is essentially a criminal recklessness standard, that is, ignoring a known risk." *Id.* (internal quotation omitted). "Even gross negligence is below the standard needed to impose constitutional liability." *Id.* (internal quotation omitted).

Prisoners possess a liberty interest in avoiding unwanted administration of antipsychotic drugs under the Due Process Clause. *Washington v. Harper,* 494 U.S. 210, 221 (1990). "[T]he Due Process permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. "[T]here is little dispute in the psychiatric profession that proper use of [antipsychotic medications] is one of the most effective means of treating and controlling a mental illness likely to cause violent behavior." *Id.* at 226. "[F]orcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada,* 504 U.S. 127, 135 (1992).

To satisfy due process in a situation in which a prison wants to exercise his right to refuse treatment, three requirements must be satisfied: 1) the State must find that medication is in the prisoner's medical interest (independent of institutional concerns); 2) the panel that reviews a

treating physician's decision to prescribe forced medication must make an impartial and independent judgment, taking into account the prisoner's best interest; and 3) the prisoner must be allowed the opportunity to argue before the review panel that he does not need forced medication. *Harper*, 494 U.S. at 222, 227, 233; *see also Fuller v. Dillon,* 236 F.3d 876, 881 (7th Cir. 2001).

The undisputed record shows that Dr. Levine assessed Glasco's mental health using his professional judgment. Dr. Levine recommended medication treatment. When Glasco stated that he would refuse the medication, Dr. Levine referred the matter to the IDOC Treatment Review Committee. Glasco was given notice, but he chose not to participate in the hearing before the committee. The Treatment Review Committee determined that Glasco suffered from paranoid schizophrenia and was highly delusional. The committee also concluded that Glasco was a risk to himself and others and that it was in his best interest to begin involuntary medication.

There is no evidence of deliberate indifference on the part of Dr. Levine. Even if Glasco had shown negligence on the part of Dr. Levine, which he has not done, that would not be sufficient to survive summary judgment as to his claim of deliberate indifference. *See Lee v. Young,* 533 F.3d 505, 509 (7th Cir. 2008) ("negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense"). In addition, there is no evidence that Dr. Levine's actions fell below the applicable standards of care.

## IV. Conclusion

For the reasons set forth above, the defendant's motion for summary judgment [dkt. 17] must be **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 07/08/2014

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Electronically registered counsel

CONZALOS GLASCO
890756
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064